UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JESUS MORIYAMA, individually and as personal representative of the estate of OLGA GUTIERREZ,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

NO. CV-06-107-RHW

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant's Motion for Dismissal (Ct. Rec. 14). This motion was heard without oral argument. Defendant asks the Court to dismiss Plaintiff's Complaint because it fails to state a claim upon which relief may be granted and due to a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(6) & (1). The Court initially considered this motion in November 2006, but it found the motion was more appropriately brought under Rule 56 as a motion for summary judgment and reserved ruling on the motion to permit further discovery and briefing (Ct. Rec. 22). For the reasons stated below, the Court grants Defendant's motion.

## STANDARD OF REVIEW

**A.     Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 1

would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). All material allegations in a complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Geraci v. Homestreet Bank,* 347 F.3d 749, 751 (9th Cir. 2003). Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro*, 250 F.3d at 732. The Court, in reviewing a Rule 12(b)(6) motion, must consider only the facts alleged in the pleadings, documents attached as exhibits, and matters of judicial notice. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999).

**B. Summary Judgment Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) shall be construed as a motion for summary judgment if matters outside the pleading are presented to and not excluded by the court. Fed. R. Civ. P. 12(b). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 2

There is a genuine issue for trial if there is sufficient evidence that favors the non-moving party for a jury to return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). When reviewing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

In its first response to this motion, the Court found that the government's motion is more appropriately one for summary judgment and that more information was necessary for it to decide the issue of the accrual of the statute of limitations.

## FACTS

Plaintiff and Olga Gutierrez[1] were in a long term common law relationship from approximately 1995 to 2006. (Ct. Rec. 29, Ex. D, Moriyama Dep., at 13-14). In October 2002, Ms. Gutierrez began regular prenatal visits with Columbia Valley Community Heath (CVCH). CVCH identified several prenatal risks, including RH negative blood type, a history of two prior first trimester losses, and a referral for dental care due to severe caries (which are normally associated with poor fetal outcome). (DSOF # 4). Fetal movement was documented during each CVCH clinic visit. (DSOF # 5). On March 5, 2003, it was noted that Ms. Gutierrez complained of decreased fetal movement. (DSOF # 6). However, the registered nurse (RN) examining Ms. Gutierrez was able to palpate movement of the fetus within the uterus. (*Id.*). At this visit, Ms. Gutierrez was 27 weeks pregnant, was given a Rhogam shot (for her RH negative blood type), and was also screened for gestational diabetes. (DSOF # 5). She was diagnosed with gestational diabetes on March 10, 2003, and she received dietary education on how to cope with this disorder. (*Id.*).

On March 26, 2003, Ms. Gutierrez again came to the clinic and complained of two days of decreased fetal movement. (DSOF # 7). Again, fetal movement

---

[1] Olga Gutierrez died in January 2006 of an unrelated respiratory illness.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 3

was detected during an exam at CVCH. (*Id*.). Ms. Gutierrez was educated about detecting fetal movements and was provided with instructions on actions to take should she have concerns about future decreased fetal movement. (*Id*.). On Saturday, April 5, 2003, Ms. Gutierrez arrived at CVCH complaining of abdominal and back pain. (DSOF # 8). She was placed into an examination room by a medical assistant and Dr. Zachary Hale was advised of her presence. (*Id*.). Dr. Hale was with other patients and asked a nurse or medical assistant (MA) to set Ms. Gutierrez up for a non-stress test prior to his evaluation. (DSOF # 9). It is the clinic's practice to have the trained MA or RN place the fetal monitor on the patient and, if necessary, to sit at the bedside adjusting the fetal monitor to assure a good quality tracing, as this test can take up to 15 minutes. (*Id*.). Neither the MA nor the RN could detect fetal heart tones with the monitor or the Doppler, and the RN asked Dr. Hale to evaluate Ms. Gutierrez. (DSOF # 10). Dr. Hale declined and instead instructed the RN to direct Ms. Gutierrez and her boyfriend, Plaintiff, to Wenatchee's Central Washington Hospital (CWH) Labor & Delivery Department for immediate evaluation. (*Id*.).

Ms. Gutierrez was admitted to CWH, and again they detected no fetal heart tones. Dr. Lori Ksander evaluated Ms. Gutierrez and was present during an ultrasound that confirmed fetal demise. (DSOF # 11). Following further consultation and with the consent of Ms. Gutierrez, Dr. Ksander induced labor and a pre-term, stillborn child was delivered. (*Id*.). Dr. Ksander noted there was evidence of scalp edema and fetal collapse that was consistent with a fetal death occurring over 24 hours prior to delivery. (DSOF # 12). There was also evidence of a Nuchal cord wrap around the fetus's neck. (Id.). Ms. Gutierrez reported that she had not detected any fetal movements since Friday, April 4, 2003. (*Id*.). Plaintiff and Ms. Gutierrez elected against chromosomal testing, an autopsy, or a pathology exam of the stillborn child, but they did agree to a pathology examination of the placenta. (*Id*.).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 4

On April 11, 2003, the CWH pathology report on the placenta was reviewed with Ms. Gutierrez. The report revealed no evidence of infection or arterial venous malformations, and the umbilical cord was intact with no evidence of inflammation. (DSOF # 14). There was "diffuse hyalinization and fibrosis," which means there was a stiff, glassy membrane around the placenta. (*Id*.). The cause of death was somewhat unclear, but it is believed to have been secondary to a cord accident or placental insufficiency. (*Id*.). Ms. Gutierrez was seen and treated on several occasions following the April 5, 2003, stillborn delivery. (*Id*.).

About one week after the stillborn delivery, Plaintiff met with the medical director of the CVCH and complained about Dr. Hale's failure to examine Ms. Gutierrez on the morning of Saturday, April 5, 2003. (DSOF # 15). About two to three weeks after the delivery, Plaintiff contacted the law firm of Lacy & Kane in Wenatchee, Washington, complaining that Dr. Hale's failure to examine Ms. Gutierrez contributed to the demise of his stillborn child. (*Id*.). The Lacy & Kane law firm investigated Plaintiff's medical malpractice claims and acquired medical records from CVCH and CWH. (DSOF # 16). The law firm mailed requests on June 19, 2003, and July 21, 2003. (Ct. Rec. 20, Exs. A & B). The medical records from CVCH were sent on August 18, 2003, (*Id*., Ex. C), but none of the medical records from CWH were sent until sometime later on. In his response memorandum, Plaintiff claims that it was not until several months later that Plaintiff learned of the possible causes of death of the child when the medical records were carefully reviewed by a medical professional.[2]

On August 17, 2005, a settlement demand was sent to CVCH. (*Id*., Ex. D).

---

[2] The exact dates Plaintiff received the records and learned of the possible causes of death from the medical professional reviewing them are not clearly stated in Plaintiffs' filings. Plaintiff simply asserts those dates were less than two years before he filed his claim with the Department of Health and Human Services on September 14, 2005.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 5

On August 24, 2005, the attorney for CVCH sent a letter to Plaintiff stating that CVCH is immune from claims for medical malpractice and that in order to pursue those claims Plaintiff must follow the requirements of the Federal Tort Claims Act (FTCA). (*Id.*).

Plaintiff filed his claim with the Department of Heath and Human Services (DHHS) claims office on September 14, 2005. (*Id.*, Ex. E; DSOF # 18). The DHHS claims office sent Plaintiff a final determination on November 15, 2005, which stated that the claim was denied for failing to file it within two years after the cause of action accrued. (DSOF # 19; Ct. Rec. 15, Ex. B). The letter also stated that Plaintiff could file suit within six months if he was dissatisfied with the determination. (*Id.*). About four months later, on February 21, 2006, Plaintiff filed this lawsuit.

## DISCUSSION

Defendant moves this Court to dismiss the medical malpractice claim on two grounds, for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Defendant alleges that Plaintiff failed to comply with the FTCA statute of limitations under 28 U.S.C. § 2401(b). Also, because the claim is time barred, the United States is deemed not to have waived its sovereign immunity under the FTCA.

**A.    28 U.S.C. § 2401(b): Statute of Limitation and Claim Accrual**

The FTCA, 28 U.S.C. § 2401(b), requires that "[a] claim must be filed with the agency within two years of the claim's accrual, and the claimant must file suit within six months of administrative denial of the claim. If either requirement is not met, suit will be time barred." *Dyniewicz v. United States,* 742 F.2d 484, 485 (9th Cir. 1984). These limitations are threshold jurisdictional requirements. *McGraw v. United States*, 281 F.3d 997, 1001 (9th Cir. 2002), *amended by* 298 F.3d 754 (9th Cir. 2002).

Federal law determines when a claim under the FTCA accrues for purposes

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 6

of 28 U.S.C. § 2401(b).  *Washington v. United States,* 769 F.2d 1436, 1438 (9th Cir. 1985).  The general rule in tort law is that the "claim accrues at the time of the plaintiff's injury." *United States v. Kubrick*, 444 U.S. 111, 120 (1979).  However, in the area of medical malpractice and wrongful death, a discovery rule applies which provides that a claim does not accrue until the plaintiff has discovered, or in the exercise of reasonable diligence should have discovered, both the injury and its cause.  *Id.* at 119-22; *In re Swine Flu Products Liability Litigation*, 764 F.2d 637, 640 (9th Cir. 1985) (applying the medical malpractice discovery rule to an FTCA wrongful death claim).

In *Kubrick*, the court found that Plaintiff had learned of his cause of action on January 1969, after consulting a doctor who told him that his injury was likely the result of treatment that he received in 1968.  444 U.S. at 123. Thus, the statute of limitations began to run in 1969, after Plaintiff had suffered his injury and when he actually learned of its cause.  *Id.*  A claim may accrue long before a party knows his injury was negligently inflicted, however.  *Id.*  "'It is well settled that the limitations period begins to run when the plaintiff has knowledge of the injury and its cause, and not when the plaintiff has knowledge of legal fault.'" *Winter v. United States*, 244 F.3d 1088, 1090 (9th Cir. 2001) (quoting *Rosales v. United States*, 824 F.2d 799, 805 (9th Cir. 1987)).

Defendant argues that Plaintiff failed to file a claim with DHHS within the two year statute of limitations.  Defendant states that Plaintiff knew that there was an injury on April 5, 2003, when labor was induced and Ms. Gutierrez gave birth to a stillborn baby.  The Government contends the discovery rule should not be extended in Plaintiff's case because the injury manifested when labor was induced.  Consequently, in order to fall within the two year statute of limitations, Plaintiff had to file the claim with DHHS by April 5, 2005.  DHHS did not receive the claim on September 14, 2005, two years and five months after the injury occurred.

Plaintiff argues he has met both jurisdictional requirements of the FTCA and

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 7

his claim is not time barred. He states he did not ascertain the cause of the injury until after September 14, 2003, due to delays in receiving medical records from the medical clinics and the time necessary for a medical professional to review those records. The medical records from CVCH were received on August 20, 2003, and Plaintiff asserts his medical professional did not finish reviewing them until several months later. This would place him within the statute of limitations for the FTCA.

Obviously the parties do not agree on the issue of when Plaintiff's claim accrued. "[W]here the issue of limitations involves determinations [of when a claim begins to accrue], summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue." *Lundy v. Union Carbide Corp.*, 695 F.2d 394, 397-98 (9th Cir. 1982). The Government argues Plaintiff knew of the injury and its medical cause either at the time of delivery on April 5, 2003; or at the time the pathology report on Ms. Gutierrez's placenta was reviewed on April 11, 2003; or, at the latest, when Plaintiff went to the CVCH clinic director and complained about the alleged failure of Dr. Hale to examine Ms. Gutierrez. The government also notes that Mr. Moriyama testified in his deposition that he was informed on April 5, 2003, that the fetal demise was likely due to the umbilical cord wrapped around the fetus's neck. (Ct. Rec. 29, Ex. D., Moriyama Dep., at 27, 31-32). As stated above, Plaintiff does not provide an exact date he reviewed the medical files with a medical professional, nor does he provide any alternative cause of death. He simply contests the Government's conclusions.

Under *Celotex*, once the moving party has satisfied its initial burden of showing there is no genuine issue of material fact for trial, the non-moving party must make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof to refute this showing. *Celotex*, 477 U.S. at 323. Defendant here has demonstrated Plaintiff knew of the injury and its likely cause in April 2003. Plaintiff has not presented any "specific facts" showing a genuine issue for trial; in fact, Plaintiff has not presented many specific facts at

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 8

all regarding when his claim accrued.  The Court finds the Government has established by clear evidence that there is no genuine factual issue here.  Plaintiff has a *Celotex* issue in that he has failed to bring forth any evidence supporting his claim of when he discovered the cause of his child's death, such as a report from his medical professional after he or she allegedly reviewed the medical records in the fall of 2003.  The Court grants Defendant's motion to dismiss because the evidence is so clear that there is no genuine factual issue regarding the statute of limitations.

**B.      Plaintiff's Alternative Argument Against Dismissal**

Plaintiff also argues that if the true relationship between a Washington corporation and the federal government is not made known to Plaintiff until the claim is filed, the United States should not be allowed to use a federal procedural bar to prevent Plaintiff's claim against a state corporation for medical malpractice committed within the state.  Under Washington law, a civil action based on professional negligence must be commenced within three years of the act or omission alleged to have caused the injury or condition.  Wash. Rev. Code § 4.16.350 (2006).  Plaintiff states that he conducted a search on CVCH and found that it was a Washington State Medical Health Center.  (Ct. Rec. 20, Ex. F).  Plaintiff filed his claim and lawsuit within the three year statute of limitations.

Plaintiff's argument fails.  Plaintiff submits that when the case was removed to federal court it was unfair to apply the FTCA statute of limitations which is only two years.  In addition, Plaintiff maintains that the only way to determine whether CVCH was an entity of the United States or a private entity was by looking to see where CVCH was incorporated.  He did a search with the Washington Secretary of State and determined that CVCH was not a federal entity because it was incorporated in Washington.  However, Plaintiff failed to do a thorough search.  Plaintiff could have and was obligated to try different avenues to determine CVCH's status.  For example, Plaintiff could have asked CVCH for this

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS \* 9

information or he could have completed an on-line search.  If Plaintiff would have done either he would have discovered that CVCH is funded through a DHHS grant, making it an entity of the United States.

In summary, the true relationship between CVCH and the federal government could have been made known to Plaintiff before the claim was filed if a more thorough search had been conducted.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant's Motion to Dismiss for Lack of Jurisdiction (Ct. Rec. 14) is **GRANTED**.

2.  The above-captioned matter is **DISMISSED** with prejudice.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and to furnish copies to counsel, and to **close the file**.

**DATED** this 7th day of March, 2007.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Moriyama\grant.dismiss.ord.wpd

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 10